UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLAYTON JOHN PAULSON,<br><br>Defendant. | 5:21-CR-50134-KES<br><br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Clayton John Paulson, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Docket 103. After counsel was appointed to represent him, his counsel of record filed a supplement to Paulson's motion. *See* Docket 105; Docket 108. Plaintiff, the United States of America, opposes Paulson's motion. *See* Docket 110. For the following reasons, Paulson's motion for compassionate release is denied.

## BACKGROUND

On May 26, 2023, Paulson pleaded guilty to attempted receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). Docket 81 ¶ 4. On August 11, 2023, the court sentenced Paulson to 60 months in custody. Docket 91; Docket 92 at 1-2. His projected release date is July 30, 2027. Docket 113 at 184; *see also Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 28, 2025) (enter BOP register number 59935-509). Paulson is currently incarcerated at Forrest City Low FCI, a low security correctional facility with an adjacent minimum security

satellite camp. *See id.*; *FCI Forrest City Low*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/for/ (last visited May 28, 2025).

## DISCUSSION

Sentences are final judgments, meaning a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The First Step Act (FSA), passed by Congress in 2018, is one small exception to the finality of sentences. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In relevant part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). A reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires both "extraordinary and compelling reasons" to warrant a sentence reduction and the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect that a defendant may initiate motions for compassionate release which a Court may, in its own discretion, grant or deny. U.S.S.G. § 1B.13, amend. 814. Amendment 814 to the Sentencing Commission policy statement also expands

2

the list of extraordinary and compelling reasons justifying compassionate release. *See id.; 2023 Amendments in Brief,* U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited May 28, 2025).

## I.    Administrative Exhaustion

Prior to the FSA's passage, only the Bureau of Prisons (BOP) Director had the authority to bring a compassionate release motion on a defendant's behalf. 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Paulson submitted a request to the warden of his correctional facility on May 2, 2024. Docket 103-1 at 1; Docket 108 at 4. Paulson filed his current motion for compassionate release on July 18, 2024. Docket 103 at 1. Thirty days have passed since this administrative request, thereby satisfying the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). The government does not claim that Paulson has failed to exhaust his administrative remedies, thereby waiving the issue. *See* Docket 110 at 1; *see also United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (characterizing 18 U.S.C. § 3582(c)(1)(A)'s procedural requirement as a "mandatory claim-processing rule" that "must be enforced so long as the opposing party properly raises it"). Thus, the court will

review the merits of Paulson's motion.

## II.     Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)–(4), amend. 814. The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an usually long sentence, served at least 10 years, and a change in law produces a gross disparity between the sentence being served and the sentences likely to imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in

4

sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

Paulson lists five health conditions in his *pro se* request for compassionate release: (1) suspicious thyroid lesions; (2) large painful mass in lower back; (3) positive screening for colon cancer; (4) positive diagnosis with tuberculosis; and (5) high blood pressure. *See* Docket 103 at 1. The record confirms that Paulson's medical conditions include his thyroid having been diagnosed with infiltrative follicular papillary carcinoma, non-malignant colon polyps, non-malignant lipoma causing pain in his lower back, positive testing for tuberculosis on October 10, 2023, and hypertension [high blood-pressure]. Docket 103-1 at 38-39, 74-78, 101; Docket 113 at 1; Docket 109 at 2, 11, 19, 106-09, 135-36. In the supplement to Paulson's motion, emphasis is placed on a biopsy which indicated a "70-80 percent probably [sic] of follicular or oncocytic cancer or NIFTP." Docket 108 at 2 (quoting Docket 107 at 3) (alteration in original).

Thus, the court will consider Paulson's requests under the "medical circumstances" category of extraordinary and compelling reasons. The court does not consider the categories for family circumstances, victimization by correctional staff, or an unusually long sentence, because Paulson does not argue that any of these circumstances apply here. U.S.S.G. § 1B1.13(b)(3), (4), (6). Similarly, because Paulson does not argue that a combination of circumstances not explicitly addressed by the guidelines warrants his release, the court does not consider the catch-all category. *See* Docket 103 at 1-3;

5

Docket 108; U.S.S.G. § 1B1.13(b)(5).

### A.     Medical Circumstances of the Defendant

The guidelines identify four situations in which the medical circumstances of the defendant constitute an extraordinary and compelling reason for early release. The subcategories of medical circumstances are: first, where the defendant has a terminal illness. U.S.S.G. § 1B1.13(b)(1)(A). Second, where the defendant suffers from a serious physical or mental condition that substantially diminishes the defendant's ability to provide self-care within the correctional facility. U.S.S.G. § 1B1.13(b)(1)(B). Third, where the defendant has a condition that requires long-term or specialized care that is not being provided and without which the defendant's health may seriously deteriorate. U.S.S.G. § 1B1.13(b)(1)(C). Fourth, where the defendant is in a correctional facility at imminent risk of a public health emergency or outbreak of infectious disease, the defendant is especially at risk, and that risk cannot be adequately and timely mitigated. U.S.S.G. § 1B1.13(b)(1)(D).

Paulson asserts that compassionate release is appropriate under (B) and (C). *See* Docket 108 at 6-9. The government denies that Paulson's medical conditions are extraordinary and compelling reasons for a sentence reduction under (B) and (C). Docket 110 at 3-4. The government argues that Paulson's medical conditions are being treated appropriately given that tests have shown that the conditions are not malignant and because Paulson is receiving medication, such as prescription-level Ibuprofen, to treat his hypertension and back pain. *Id.* Additionally, the government does not consider the several months between the preliminary finding of a high chance of "follicular or

6

oncocytic cancer or NIFTP" in his thyroid and any further testing to be an extraordinary and compelling reason for compassionate release. *See id.* at 4.

### 1. Substantially diminished ability to provide self-care

Under subcategory (B), an extraordinary and compelling reason for early release exists where due to a serious medical condition, cognitive impairment, or aging, the defendant presents with a substantially diminished ability "to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13(b)(1)(B). This court has found that a defendant is able to provide self-care if they can complete the tasks of daily living. *See, e.g., United States v. Ibrahim*, 2024 WL 554548, at *3 (D.S.D. Feb. 12, 2024) ("Where a defendant can complete the tasks of daily living and provide self-care, courts have found that early release is not appropriate."); *United States v. Robertson*, 2025 WL 370618, at *4 (D.S.D. Feb. 3, 2025) (finding same).

Paulson largely focuses on his "70-80 percent probably [sic] of follicular or oncocytic cancer or NIFTP" to establish that he has a serious physical condition for which self-care is "substantially" diminished in the current prison environment. *See* Docket 108 at 6-9; *see also* Docket 103 at 1. Paulson argues that his ability to provide self-care is substantially diminished because the correctional facility has been "unable to provide Paulson the timely medical care required" and has delayed "urgent and necessary medical treatment." Docket 108 at 6-7.

The court does not doubt that Paulson's myriad of medical problems pose some challenges to his ability to provide self-care. *See* Docket 103 at 1 (listing five declared medical conditions that Paulson suffers from). Paulson's

7

medical record sheds light on how his medical conditions impact his ability to provide self-care. For example, Paulson reported to a medical provider that he had pain caused by lipoma in his lower back that interfered with his quality of life. Docket 103 at 1; Docket 109 at 2-3. Medical documents also show Paulson needs to take pills often to control his hypertension, pain, and hypothyroidism. Docket 109 at 3, 19, 106-08; Docket 113 at 1, 28. On January 16, 2025, Paulson underwent a right hemithyroidectomy to address the infiltrative follicular papillary carcinoma of his thyroid. *See* Docket 113 at 1, 39, 100-01. Following the surgery, Paulson reported experiencing pain, swelling, and tenderness around his neck. *See id.* at 14-17, 20.

Although there are concrete examples in the medical record of ways that Paulson's ability to provide self-care is limited, Paulson's motion and supplement do not explain how his ability to provide self-care is diminished by his medical problems to the degree required by § 1B1.13(b)(1)(B) to constitute a substantial impairment. *See generally* Docket 103; Docket 108; Docket 111; Docket 113. Courts have interpreted substantial impairment narrowly and found it "'equat[es] to confinement to a bed or an equivalent inability to be independent in the activities of daily living pursuant to the BOP's guidance.'" *Robertson*, 2025 WL 370618, at *4 (citation omitted).

Paulson's health conditions and medical records do not establish that Paulson's ability to provide self-care within the correctional facility is substantially diminished. *See generally* Docket 103-1; Docket 109; Docket 113. For example, the hemithyroidectomy does not appear to have rendered Paulson "completely disabled" or unable to engage in basic self-care because he

8

declares that "I guess everything is ok with my thyroid," generally denied any serious complaint, and asked to return to work. Docket 113 at 4, 8-9, 95.[1] Because Paulson's other medical issues do not indicate a substantially diminished ability to provide self-care, no extraordinary and compelling reason for compassionate release exists solely on the grounds that Paulson is impaired in his ability to care for himself.

### 2. Long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration or death

Under subcategory (C), the guidelines define as an extraordinary and compelling reason circumstance(s) where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Subsection 1B1.13(b)(1)(C) most directly addresses Paulson's contention that compassionate release is warranted because he claims he has faced significant delay in receiving medical attention for his possible oncocytic thyroid cancer. *See* Docket 108 at 8–9.

The record supports that Paulson's medical conditions are for the most part being appropriately managed while in federal custody. *See generally* Docket 103-1; Docket 109; Docket 113. He has frequently been able to visit medical providers and have his conditions diagnosed and treated. *See id.*

---

[1] Paulson began his employment in food service on August 13, 2024, after he had received biopsy results on June 28, 2024. Docket 113 at 41, 179.

9

Moreover, Paulson has received medication and pain treatment for his hypertension and back pain. Docket 109 at 3, 19, 106-08. Additionally, the results of his colonoscopy demonstrate that he has received medical attention for his non-malignant colon polyps and that they are not likely to develop into colon cancer. *Id.* at 135-36.

Paulson does identify one concerning pattern in his medical treatment. Paulson had a thyroid nodule result on May 23, 2024, which found "atypia of undetermined significance." *Id.* at 9. Paulson then was diagnosed with a "70-80% probably [sic] of follicular or oncocytic cancer or NIFTP" on June 28, 2024. *Id.* at 11. The doctor made an "urgent" request for Paulson to be evaluated by an Ear, Nose, and Throat (ENT) specialist for a "possible thyroidectomy." *Id.* Paulson was not seen by an ENT specialist until November, who thereafter scheduled a right hemithyroidectomy. *See* Docket 113 at 24. Paulson underwent a right hemithyroidectomy in January and successfully recovered. *Id.* at 4, 20. Paulson had follow-up appointments in March and April of 2025, where doctors confirmed that his right thyroid nodule showed "infiltrative follicular papillary carcinoma" and that he received "definitive treatment" via his hemithyroidectomy. *Id.* at 1, 85. ENT recommended having a thyroid ultrasound in six months. *Id.*

Paulson's level of medical care, while perhaps delayed at times, has consistently addressed the infiltrative follicular papillary carcinoma of his thyroid and other medical conditions. Other than the delayed evaluations between the June discovery of a chance of cancer to the November ENT clinic

recommendation for a right hemithyroidectomy, Paulson has generally received timely, necessary medical care while in the custody of the BOP. Here, the court concludes that an extraordinary and compelling reason for compassionate release does not exist under 1B1.13(b)(1)(C) on the grounds that Paulson failed to receive his hemithyroidectomy within five months. *See* Docket 103 at 1-2; Docket 108 at 8-9; Docket 111 at 3-4. Nonetheless, the court recognizes that Paulson has faced serious medical issues and had there been a sustained pattern of ignoring Paulson's thyroid issues, the court's assessment may have been different.

### III.     Sentencing Factors

The § 3553(a) sentencing factors confirm that compassionate release is not warranted. The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Paulson was arrested during a sting operation and ultimately convicted for attempted receipt of child pornography. Docket 81 ¶¶ 3-5. In his conversations with the undercover persona, Paulson knowingly attempted to receive child pornography by asking for images during a sexual, online conversation with a 15-year-old girl persona. *Id.* ¶ 8. When Paulson was arrested after attempting to meet the 15-year-old girl persona, officers found a syringe in Paulson's pocket that tested positive for methamphetamine. *Id.* ¶¶ 8-16. The court finds the nature and circumstances of Paulson's offense weigh against his motion because it indicates that receipt of child pornography was only one part of Paulson's intentions.

11

The court also considers the characteristics of the defendant. Paulson has four prior convictions for traffic offenses, including two DUI convictions, one conviction for reckless driving, and one conviction for driving with a suspended license. *Id.* ¶¶ 34-37. Paulson has committed no infractions during his time in custody and therefore has no disciplinary history. Docket 113 at 177. Paulson reported having a good relationship with his parents and family. Docket 81 ¶¶ 50-51. He asserts that upon release he will have work at Moda Stone and would be able to live with his parents if other options fall through. Docket 103 at 2. Paulson's limited criminal record and good behavior while in custody are favorable to his motion for compassionate release. While Paulson's case was pending, however, he obstructed the administration of justice when he cut off his location monitoring device, absconded for several weeks and failed to appear at his pretrial conference hearing until he turned himself in. *See* Docket 81 ¶ 18. The court finds the characteristics of the defendant generally support his motion, though only somewhat given the obstruction of justice incident.

The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Paulson has served 46.6 percent of his sentence as of April 21, 2025. Docket 113 at 184. Given the circumstances and seriousness of the offense, however, and the minimum sentence Paulson received for his crime, the court finds that granting Paulson's motion for compassionate release would not reflect the seriousness of the

offense, promote respect for the law, and provide just punishment.

The remaining § 3553(a) factors do not support a sentence reduction. If the court granted compassionate release, similar conduct in others might not be deterred because Paulson's punishment to this point is not quite half of the statutory, mandatory minimum for his offense and therefore is insufficient to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B). Further, while the court commends Paulson for his rehabilitative efforts while in custody, Paulson engaged in a serious offense when he attempted to obtain sexually explicit photos of someone he believed was a 15-year old girl. *See* Docket 81 ¶¶ 8-16. Overall, the court finds the § 3553(a) factors weigh against Paulson's motion and confirms that early release from custody is not warranted.

## CONCLUSION

After careful consideration, the court concludes that Paulson has failed to satisfy the extraordinary and compelling reason standard under § 3582(c)(1)(A). Thus, it is

ORDERED that the defendant's motion for relief under the First Step Act (Docket 103) is denied.

Dated June 12, 2025.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

13